Howdy, everybody! Okay, we're here for our last case, 24-15-36, opposite Mr. Gloss. Yes, Your Honor. Okay, we'll hear from you now. Thank you, Your Honor. May it please the Court. Again, this is Peter Gloss for the appellant, Mr. David McKay, in this matter, who's in the courtroom with me today. Your Honors, the errors by the District Court below require this Court to vacate the judgment against Mr. McKay for breach of fiduciary duty as a director and officer of Mono Electric Group, Inc., which is also referred to in the briefing by its acronym MEG, or Meg. Two of those errors, one, the failure to enforce a release of claims, and two, the lack of any duties occurring after the sale of the company viewed together warrant an order that directs entry of judgment in Mr. McKay's favor. But at a minimum, Your Honors, all of the errors that we have briefed, including flawed jury instructions and improper evidence, in their own right require remand for a new trial on this particular claim. Sir, can I start with a question about the release? Yes, Your Honor. So, if this release barred the fiduciary duty claims at issue in this case, can you give me an example of a claim that wouldn't be released by the SBA? I've been trying to contemplate. Like, if you, I agree, this is a broad release, but I'm trying to figure out, it would be helpful to me to identify a type of claim that you think would not have been covered by this release. Yes, Your Honor. And actually, such a claim was brought in the case. There were four causes of action, one of which was breach of contract. And the contract was called a transaction bonus agreement that was pre-purchased, but was incorporated into the stock purchase agreement as a transaction document, right? And so... And that's not released? No, Your Honor, because there's a kind of introductory language in the release that exempts, that carves out the SBA itself, obviously, or transaction documents. And so, Mr. Mona, the appellee here and the plaintiff below, alleged that a lot of the same, or in fact, all of the same conduct that encompassed his pre-purchase breach of fiduciary duty claims, also constituted a breach of that contract, the transaction bonus agreement, which was count one. That went to the jury, and Mr. McKay prevailed on that claim. Okay, but that gets you somewhere, but I guess my one concern would be to say, so you say it's covered by the introductory clause? Certainly. Yeah. Okay. Give me an example of a claim that is not covered by the introductory clause, but is still excluded. Well, certainly... And the reason I say that is because if the number is zero, then this could be a heck of a lot shorter. It could say, other than the things covered by this introductory clause, comma, everything on earth is released. But it doesn't do that. It lists a whole series of things, which implies to me there's some universe of things that's not covered by the introductory clause that is still not covered by this release. Any obligation that would be arising out of the contract itself. I think it's meant to be fairly specific, Your Honor. I mean, obviously, a rescission claim wouldn't be... Well, then this clause could have been a heck of a lot shorter. It could have been. I didn't draft it, Your Honor. Fair. Maybe it should have been, but it's not... I would have said all claims including, but not limited to, this big long list. It just seems weird that you would say this big long list when what you really mean is everything in the world not covered by the introductory clause. Repeat that, Your Honor. I'm not following. It seems to me that unless you can give me an example of a claim that is not covered by the introductory clause, but is still not released, then you are essentially asking us to read this clause as if it said, excluding the following, comma, everything on earth is released. That is how I think a reasonable interpretation of the clause is. It seems to me that if a reasonable person who meant to say that would have said that rather than given a big long list. Well, here in this particular clause, as applicable to this case, you have some very specific language that I would like the court to focus on, especially the language that states, and just for reference, Your Honors, the release is on pages 5040 to 5041 of the Joint Appendix. It states that without limitation, the release includes claims that arise out of Mr. Mona's status as a former shareholder of the company. When we're looking very specifically at the claim that's before this court, breach of fiduciary duty against Mr. McKay as a pre-sale director and officer of the company, I think clearly the only way that Mr. Mona could have brought that claim was under his status as a former shareholder of the company. There's simply no director and officer fiduciary relationship before that. So although we may look at this in the abstract and say, well, what claims might be carved out, what claims are not carved out here, you call out the very claim that the court allowed to go to the jury in this case, the pre-suit fiduciary duty claim, that clearly should have been released and should have been ruled on as a matter of law. Your Honors, I'd also like to touch on the post-sale period quickly, unless there are further questions on the release. The post-sale period starts the day after the stock purchase agreement is signed on February 1st, 2020. Another critical aspect of that agreement is Mr. Mona's representation and warranty that he would produce the resignations of all the directors and former management of the company, which would include Mr. McKay. So Mr. McKay accordingly resigned as a director and officer of Meg on that same day. Here, the district court allowed the presentation of evidence and a finding of liability based on post-sale conduct when Mr. McKay was neither an officer or director of Meg. No Maryland court or any federal court interpreting Maryland law has ever expanded director and officer liability in the manner allowed by the district court in this case. And this is particularly true, as I mentioned, when Mr. Mona himself knowingly and intentionally severed the fiduciary relationship with Mr. McKay as part of the stock purchase agreement. What about a provision requiring confidentiality with regard to matters involving the contract? That obviously would extend past the consummation of the deal. A provision in the contract? Are you arguing that you can never have any, there's no such thing as a breach of fiduciary duty after a sale is completed? A provision in the contract itself, the purchase agreement itself that require confidentiality? I'm just wanting to know, are you saying no responsibility can continue after completion of the sale of the company with regard to an officer or director? For specific issues like confidentiality, it's possible. Let me give an example that occurred to me. He's going to make my question sound short. I'm not sure that's going to be the case. I will do my best to make my own question coherent. So it seems to me that before I became a judge, I was a lawyer and I represented clients. I had a fiduciary relationship with them. And my former clients told me things. They're not my clients anymore. But I guess I have assumed that I am still bound by my duty of confidentiality to my former clients, even though they are my former clients. That's true, right? Without question, Your Honor. Okay, so that suggests that certain fiduciary obligations survive the ending of the fiduciary relationship. At least some must. So long as they arose before the ending of the fiduciary relationship. Sure, sure. And I think that's the key here, right? The duty of confidentiality would be a duty that originates during the fiduciary relationship and clearly must continue as a matter of law or else the fiduciary relationship Because every fiduciary learns all kinds of things in the course of their fiduciary relationship. Correct, or else it doesn't mean a whole lot. So if we're talking about confidentiality, that may be an exception to a general rule that fiduciary duties end when the fiduciary relationship ends. So no, Your Honor, I would not argue that there cannot be any world in where any obligation can't continue. Okay, so let's go one step further out from confidentiality. The first duty is to not blab your client's confidences. The second is not to use information you learned in your capacity as a fiduciary to harm your client, right? It's not just that I can't blab what my client tells me. I can't use the information my client tells me to the detriment of my client. During the fiduciary relationship, I certainly cannot use information my client tells me to the detriment of my client, right? Oh, absolutely. Even if I never tell anyone, I just hold it in my head and go do things in the world, right? Correct. So why doesn't that obligation also survive the ending of the fiduciary relationship, to not take information you learned as and when you were a fiduciary, to then use it to harm the client after the fiduciary relationship is over? That seems that it would be an intentional tort beyond simple breach of fiduciary duty. But breach of fiduciary duty isn't intentional. It can be. It can also be a negligent tort, and here the allegation was negligent breach of fiduciary duty, Your Honor. And the specific conduct at issue post sale was really just Mr. McKay acting as an employee allegedly in a manner that didn't benefit the previous owner of the company. And so here, to hold that Mr. McKay, and before I go, I wanted to address Judge Hayson really quick. Because when we're talking about lawyers, it's a little different, I think, than when we're talking about an employee of a company. Because the employee of a company is always going to have an obligation to act in the best interest of the company. And if ultimately, after the purchase and sale transaction and acquisition, if that isn't necessarily in the best interest of the previous owner, I don't think it's a very good analogy to look at it in the lawyer-client context and the employee-employer relationship. You bring up an interesting point. Your client became an employee of Archkey. Of Meg, Your Honor. Oh, okay, Meg. I'm sorry. Of the entity, so I don't mess up the names. Presumably had some duties of loyalty to that company. More than presumably, I think admittedly. Yes, yeah. So he may have been in a tough position, right? I mean, is the fact that he had duties to his new employer, does that mean as a matter of law he doesn't have duties to someone else? I mean, you could, for example, lots of people are warned not to put yourself in a position where you have conflicting duties. Correct. That's a bad deal for lawyers. That's a bad deal for other people. You may not always realize it at the time, but with the benefit of hindsight, having conflicting duties can be maybe a problem. Well, why don't we have that here where Mr. McKay, as an employee, had certain duties, but he had, you know, his fiduciary relationship may have terminated, but some of those duties that arose pre-closing continued. Well, here, Your Honor, I think we need to look at it in the broader context of the complete separation of essentially the parties as part of the stock purchase agreement. I mean, you have a document that is extremely lengthy that has both the release, representations and warranties, and other various aspects that show a clean break here. And so when you're in the business world, the corporate context, as we are here, you can address those by contract, and that's the whole purchase of the stock purchase agreement, and the very point of securing the resignations of the pre-sale directors and other management of the company. Does your client, and I'm not saying these equal fiduciary obligations. They may be more promises or things of that nature. But it seemed, I mean, does your client contest that you had a duty to attempt to maintain the workforce and the culture of the company? Yes, we did contest that. You contested whether that was a responsibility of your client? Yes, we did, and that was a key aspect of the contract claim. And so when we're talking about what I think is the real differences between fiduciary duties and, well, can any kind of running of the business nature duty exist, if it's part of the contract and it's worked into the SPA, then the answer is unequivocally yes. That claim was brought, tried, 17-day trial, and the jury found in favor of Mr. McKay on that claim. And so there was no, there was an avenue of recovery, but the jury didn't agree with it. The fiduciary duty claim post-sale was not appropriate because it improperly expanded the duties beyond what I think Maryland law, or to be honest with you, your honors, any case that I've been able to find. I could not find a case, nor has my colleague in opposition cited a case, where a corporate manager's fiduciary relationship and duties continue to a pre-purchase shareholder in the same way as here. I'm sorry, I'll make sure we get that. What did you, before us is to the extent the award involved, assume we have a, the jury verdict pertained to pre-closing duties. Yes, your honor. Do you, I know you have an argument about, did you challenge the sufficiency of the evidence in terms of conduct, whether it would amount to a breach of fiduciary duty? Yes, we did, your honor. And? How? I'm not sure I. Well, in terms of the sufficiency of the evidence. As to, you know, to the extent, you know, my question assumes there's a, the verdict relates to pre-closing misconduct. Well, we don't know what the verdict relates to. I understand that, I understand you have a separate argument on that, and I'm not asking, this isn't like a harmless question. Correct. I'm just saying if we zero in on the claim when he was a fiduciary, pre-closing, is the, I didn't see, and I may have misunderstood it, that you said there's no evidence from which a reasonable jury could conclude that he didn't violate his duties pre-sale. That's not an aspect of the appeal, your honor. That's what I was asking. No, so that's not before the court. That was before the trial court, but we have not pursued that particular issue on appeal. Can I take you to the question of the attorney-client privilege issue? Yes. So the parties both seem to assume this is federal privilege law. Why isn't under federal rule of evidence this an issue of state privilege law? When you speak of. The attorney-client privilege and whether attorney-client privilege was waived, all the cases you're all citing seem to be federal cases that assume this is federal privilege law, but it seems to me that the last sentence of federal rule of evidence 501 says any attorney-client privilege issues in this case are governed by state law and not federal law. I think it is a state. When we're talking about the evidentiary waivers, your honor, that we've briefed. You're all citing federal cases and no one tells me what the relevant state law says. Your honor, those are there are federal cases interpreting Maryland state privilege law that yes, it would be. And you think it's Maryland law? Because it says if the state for which the state law supplies the rule of decision. What is the state law that supplies the rule of decision for purposes of these privilege issues? Maryland.  Yes, your honor. Because it was a Maryland corporation operated in Maryland and Maryland law would clearly apply to the privileges that issue. Your honors, if I could move very, very quickly as I'm running short on time to the jury instructions here. The verdict form contained, as I mentioned, separate lines for director and officer liability. But the district court gave a single overly broad instruction as to officer and director duties. As to director duties, I think it's pretty clear that the jury instruction was overly broad. Director duties are very specifically defined in Maryland statute at section 2405.1 of the corporations and associations section. Three duties, your honors. Good faith, reasonable belief in the best interest of the corporation, and an ordinary prudent person standard. More importantly, however, is subsection G of that code that mandates a presumption of good faith. By disregarding the statute and instructing the jury that Mr. McKay could be found liable as a common law fiduciary, the district court failed to fully and correctly inform the jury on director and officer duties and the presumption of good faith. On officer liability, although the statute speaks only to director liability, the case law in Maryland and elsewhere, and especially Delaware, which Maryland looks to for corporate law guidance, applies the business judgment presumption of good faith in favor of officers as well. And there's really no reason why Mr. McKay in his status as a director officer should not have that same presumption, and it should not have been disregarded by the district court. Your honors, I know my time is done. I'm over time. If you have any further questions, if not, I will reserve. Thank you. Thank you. Thank you. Good morning, and may it please the court. Let me begin where Judge Quattlebaum's last question was. Is there a challenge to the sufficiency of the evidence? The answer is no, as Mr. Gloss recognized. That's not before this court, but I think it's really important to keep this in mind. After you weed through all of the arguments that Mr. McKay is advancing now, what you don't find is that the evidence of his pre-sale breaches of fiduciary duty was lacking, that when Mr. McKay was on cap's time and on cap's dime, he didn't breach his fiduciary duties. He did so in several ways. He channeled the sale efforts towards Archkey for self-interested reasons. He disclosed confidential insider information about Meg to Archkey. He mischaracterized competing offers. I don't mean to cut you off, but I think I can tell where you're going. Quite frankly, I might contest whether at least the phone call is something that a regional jury could combine, could conclude as a breach of duty, but maybe there's enough conduct there where a jury could. The damages award here, I mean we don't know for sure where it came from, but in trying to kind of make sense of where a $2 million award could be, the place in the record that it seems most likely is the delta between the amount of the hospital reserve and the settlement. It's not exactly, but does that damage award combined with the Note 5 give us a pretty strong indication, along with the defense verdict on the claims that your colleague talked about, that what this jury did was found a breach of fiduciary duty for the post-sale conduct and frame that issue of whether that duty continues or not to us? Thank you. I appreciate the court's question. I think the answer is no, however. I think there was more than ample evidence of damages that you can tie to. What's the evidence that was put out there that would support a $2 million verdict? So for one, the jury heard evidence of attorney's fees. The jury heard evidence of the transaction bonus, which those two figures came to approximately $2 million, most of which I'll say were not mine. I think there was more than ample evidence. There was lots of evidence about the competing offers I mentioned and the different offers that have been put on the table and that Mr. McKay did not fully and squarely disclose to Mr. Mona. And so I think I appreciate the court's question and why one might say, oh, well, this is $2 million, therefore that's it. I don't think that's correct. There is some mystery there. That is part of the jury process. We never exactly know. And I think that's an important thing to remember here. We are here after a month-long trial before the jury, after post-trial motions before the late Judge Mazzetti. There is a lot of water under the bridge, and that's why the standards of review are what they are. So I appreciate the court's question on that point, but there is more than ample evidence. And, in fact, this was briefed post-trial, and we spelled out several different ways that the jury could have reached that $2 million verdict. But is that the question? So let's posit that I agree with you, for the sake of argument at least, that the evidence of pre-sale conduct is sufficient to support the jury's verdict. But the jury was also told it could consider post-sale conduct. And if the jury considered, so if we posit that post-sale conduct is legally erroneous, I know you don't agree with that, but for the purpose of this question, posit that that's true. Then the question isn't, so then we basically have the jury's given two theories. One's valid and one's invalid. It returns a verdict that doesn't tell us what theory it adopted. If we're trying to decide whether the invalid theory is harmless, we don't have to just ask, was the evidence sufficient on the valid theory? We have to say, are we quite certain the jury would have reached that verdict on only the valid theory? And that's not a sufficiency question, right? No, I agree with that, Your Honor, and I would answer in a couple of different ways. First, we're coming at this with the benefit of hindsight. There were four counts submitted to the jury, including the fraud count, which easily went before and after. I don't think that it's this court's role to look at things. It is always this court's role to look at things from hindsight. But to look at what was presented to the jury, when you're weighing, let me try to enunciate that better. When you're looking at the jury instructions and whether they were sufficient and legally appropriate, the question isn't, well, knowing what we do now, would the instructions have been given differently? Hold on. This comes up in criminal cases all the time. Judge Cautabon and I were on one a year or two ago, where there's two theories of liability submitted to the jury, and a pallet court later concludes one theory was legally appropriate, one theory was legally invalid. I mean, I get it. We can't – but we have to do the best we can. The question we have to ask is, are we quite certain the jury would have reached the same result had it been given only the valid theory, and that's not just a sufficiency question, right? I agree with that, Your Honor, and I think we are quite certain. And let me also say the questions that Judge Traxler and that Your Honor were posing to my friend on the other side, aren't there duties that continue? So to this validity question I'd like to address, absolutely there are fiduciary duties that can continue. Judge Traxler, you identified the duty of confidentiality. Corporate opportunities are another one that will continue. You're saying this, are you saying it based on authority that you could point us to? One case that I would point the court to, we cited the Today Homes out of the Supreme Court of Virginia. I recognize Virginia law is not applicable here, but the proposition there, and that's a decision of your colleague, Judge Agee, back before he joined this bench, recognizes that – So what's the fact pattern there? What's the thing that the person did after the breach of fiduciary duty that was held? It was more akin to corporate opportunities, that the corporate opportunities that the former, I believe it was an officer in that case or an employee, continued and – So it's an opportunity he learns about when he's an employee. He stops being an employee and then he seizes it for himself? Absolutely. And so it continues past. And so it's well settled. And what you see in that case and the cases – there can be post-sale fiduciary duties that continue. That's the big point of debate. But let's assume we agree with you hypothetically. Here, Mr. McKay, everyone agrees that it was understood that he was going to work for the company after. In fact, your client wanted him to. He wanted him to do things like preserve the culture and make sure people don't get fired. But in going to work for a company, that creates legal obligations to not do harm to your employer, right? So could he, in your view of the world, comply with his obligations to his new employer and also comply with what you say his obligations were in the settlement of that hospital matter? Judge Massetti identified the exact conundrum that Mr. McKay put himself in. He put himself in a situation where he had to answer to two masters. And that's not something – Not the insistence of his former master. It's not like he just did this. Well, I appreciate that. But he did have this information. He did have a duty. So I guess your answer is, to my question, you said the district court judge recognized the conundrum. But the conundrum is no, he can't fulfill the duty that you say he had once he went to work for the company. I don't know that the answer is that he can't. I know the answer is that he didn't in this case and on the facts of this case. One could. There are certainly circumstances where the interests of the new employer and the former may not be directly at odds. So can I ask you the flip side of the question that I started with your colleague? What's an example of a kind of claim you think this did release? I couldn't name – I'm sorry. I don't mean the claim that you brought here. Give me an example of something that as a result of this release. So for instance – and I apologize. I'm getting ahead of myself. I'm mixing my thoughts here. The type of claim – for instance, if we discovered today that Mr. McKay – or let's even assume we were within limitations in Maryland. If we discovered today that for ten years prior to the sale, Mr. McKay had been embezzling funds, that claim is probably released. Because it doesn't relate to the stock purchase agreement and the transaction evidence thereby. And so the key here is that the claims relate to the stock purchase agreement and the agreement culminating there. Mr. McKay's primary case that he cites on his release argument is the Parfee case out of Delaware. Okay, so same follow-up question I asked your friend on the other side. Bracket that language. What claims after the words – the comma – did you release? Because I'm looking at it right now. This is JA 5040. Excluding in all instances any claims related to or arising out of this agreement, and then comma, and then it releases a whole bunch of claims. And the question I said to him is it doesn't say all other claims. So give me an example of a claim it doesn't release. But it does release a whole bunch of other claims besides those relating. So what's an example of those that it releases? So I think the example I just gave would fit that if I'm not mistaken. Okay, because that one's not related to –  And that's the point. And the reason I started talking about the Parfee case is there – Your point is if they want a clean break and if there was misconduct that kind of did not – was part of this purchase, which they're – We're wiping the slate clean. Sure. Sexual harassment claims. You name it. Any of the many types of things that one sees, that has nothing to do with this transaction, with the conduct that Mr. McKay took with respect to this transaction. And so that's really it. I think the way that Judge Massetti put it was spot on, stating, you know, among other things, the evidence showed that in selling Meg, which culminated in the execution of the XPA with Archkey, McKay disclosed confidential and unfavorable insider information about Meg to Archkey. They're a very contracting party. It was the beneficiary of these breaches of fiduciary duty. And so it absolutely – and the very broad language relating to Supreme Court has recognized this, this court has recognized this, Delaware courts recognize this as very broad language. So going back beyond the release, I just want to make sure I understand where we settled with respect to the post-sale duties. Based on the hypothetical in the case that Judge Heitens referred to, do you agree – it sounds like you're acknowledging that sufficiency of evidence on the pre-sale duties wouldn't be enough to say it's harmless if you assume there are no post-sale duties. Do you need to prevail on the proposition that there are post-sale duties here that apply in order for us to affirm the district court? I think I see where the court's coming from with the question. I think the answer still is no. I think the fact of the matter is – How can you say no based on what you – maybe I'm misinterpreting him.  I can see you saying no because there's a pre-sale duty and there's sufficient evidence. If that's your argument, that's got, I think, some precedential problems. I think the answer to the court's question is when we're talking about jury instructions and what's required, it is not necessary to get into the absolutely super granular detail that McKay is now arguing. And I think the question is – Isn't it fair enough that you may or may not have to go into granular detail, but does there have to be an obligation of Mr. McKay post-sale, a fiduciary obligation post-sale for us to affirm the district court? Putting aside whether it was perfectly articulated or whether it was handled with a note and all that sort of stuff, but just on to that matter, does there have to be a legal obligation post-sale for us to ultimately affirm? I don't think there has to be. I think there was in this case. And I also think, again, we're talking about jury instructions and what is expected of the trial court at that time. And what is expected of the trial court is to correctly state the law. So if the law is post-sale conduct can't be a breach of fiduciary duty, then those instructions are a legal misstatement of the law. I appreciate that point, Your Honor. But let me just say, even Mr. McKay's proposed verdict form included a post-sale fiduciary duty questions. The court rejected that, and I think properly, because it became an unimaginable thicket. And I can't imagine any circumstance in which the jury could have gone our way based on that verdict form, proposed verdict form. But I think the point is, even at that time, Mr. McKay recognized that post-sale duties existed. But that seems – your answer seems to be there is a post-sale duty. So it seems like you are not wanting to say yes, but you kind of have to say yes. I'm not trying to be evasive at all, Your Honor. I think the question is did it – did the jury instructions that were given accurately state the law? Okay. So how about this? Complete the following sentence. Even if allowing the jury to consider post-sale conduct was legally erroneous, comma, we conclude any error in doing so was harmless because. I appreciate now I'm spinning in circles to your question about sufficiency of the evidence and that being different. I think the answer is here the – Wait. So you're telling me you can't complete the following sentence? I think – I guess what I'm trying to recognize there, Your Honor, is because there is extensive evidence of the pre-sale breaches. And we conclude that it's not – this is a criminal case, so it's not a Chapman beyond a reasonable doubt. It's the civil harmless error. So we conclude there is not a substantial risk that the jury's verdict would not have been the same, something – civil harmless error standard, basically. Based on the evidence in this case, I think that's right. And so I recognize where the court's going with that. You had started to mention Parfitt. Could you – I mean, Parfitt seems on its face to be a bad case for you. Can you explain to me how you have us distinguish Parfitt? Absolutely. Parfitt is distinguishable in a number of ways. One, that's an arbitration case. And I appreciate that the principle surrounding construction of arbitration provisions is treated often as the same as all contracts. Every headnote in that case is arbitration. So we – Let me also – So West's headnote dictate our decision? Not at all. I think they follow, Your Honors. But I think it's worth some recognition in terms of what that case stands for, how it's been cited also by Delaware courts. I think it's the Myowski case that Mr. McKay cites. Same thing, just for arbitration. The point is this. When our telephone provider has assigned an arbitration agreement relating to the services that they're providing us and then one of their employees drives over our mailbox on their way to and from wherever, that claim about the mailbox, that's not subject to arbitration. Well, hold on. Do you do any Federal Arbitration Act work? I do. So here's my concern, though. If PARFI is an arbitration-specific rule, it violates the Federal Arbitration Act. And the only way that it doesn't violate the Federal Arbitration Act is if it's not a rule that singles out arbitration agreements for special claims. So PARFI, first of all, is a Delaware case. State courts are bound by the Federal Arbitration Act. Yes. Let me just say this. So PARFI, the question at issue was whether the specific fiduciary duty claims were bound by the arbitration agreement. Right. The court held that those claims existed separate and apart from the arbitration agreement, that there was no reason to bring them in arbitration, and it guarded the role of ---- I thought you were going to lead off with this. If I recall, the agreement there didn't have the relating to language. That is absolutely correct. That is absolutely correct. It was not a relating to. And you had another argument that just it's arbitration versus the other. That is a very compelling argument, Your Honor. It is not the same language. It deals with arbitration. It deals with a very different issue. I see that I only have two minutes left, and so let me just address some points of Maryland corporate law that I think McKay has just misstated. First, Section 2405.1c, I know that's a mouthful, of Maryland general corporation law creates a statutory standard of conduct for directors only. That dates back to 1976 when the Maryland General Assembly adopted only for directors the Model Business Corporation Act. It only relates to directors. So what do I say about Golding? Golding, absolutely. Golding is simply wrong for a variety of reasons. I don't think it is open to this court to say that Maryland's highest court is wrong about Maryland law. I think that violates the first rule of Erie Railroad versus Tompkins. This court should look to Eastland Food versus McKaya. That's a 2023 case from Maryland's highest court, from the Maryland Supreme Court. That is the case that very clearly says, and I'll quote it, Section 2405.1, quote, does not therefore apply to stockholders or officers acting in their capacity as such. So the argument would be that Golding has some overbroad language that Eastland claws back. Golding is dead wrong on its face. Again, I don't think it is open to us to say that Maryland's highest court is wrong about what Maryland law is. I appreciate the humility, Your Honor. No, I literally think it's a violation of Erie Railroad versus Tompkins for us to think that Maryland's highest court is wrong about Maryland law. I agree and understand, but I would parse the decision. The decision points to the Black versus Fox Hills case, deals with directors only. The decision cites Section 2405.1 expressly, only directors. The decision refers to the Parrish case from, I believe, the 20s or 30s. That's a director derivative case, only directors. So I appreciate what the court's saying about not wanting to second-guess the Maryland Supreme Court. The answer is the court doesn't have to. Look to Eastland Food. The other proposition you'll see in Eastland Food is that the Maryland's business judgment rule is just the combination, the interplay, between subsection C and subsection G of Section 2405.1. There is a presumption. That presumption, and very clearly in Eastland Food, the court says, I see my time is up, if I may. In Eastland Food, the court very clearly says it's just that. It's a presumption. There's no indication that a heightened standard is required to go back to rebut that presumption. All you need is some evidence, and what evidence? There's no question about this. Evidence of self-dealing absolutely rebuts the presumption, and we absolutely have that here. I'd be happy to answer any further questions that the court has. Thank you, counsel. Thank you very much. Thank you, Your Honor, and I will be brief because I went over time on my original argument. But I wanted to address just a few points raised in opposition. And one relates to the release. I think to interpret the release in the manner that Mr. Mona advocates would require the court to both ignore and essentially strike the very specific language that we discussed, that includes, quote, unquote, without limitation, all claims arising from Mr. Mona's status as a presale shareholder of the company. And first of all, that does not conflict with the carve-out that's been the topic of conversation. But even if the court views a conflict between this very specific language that releases the presale claims and the carve-out, it's basic contract construction that when you have a conflict between general and specific language, the specific governs. So here, there's no reason why the fiduciary duty claim shouldn't be released. The district court below found that there was no ambiguity in favor of Mr. Mona, that of course this claim can't be released, but it can only do so by ignoring language to the contrary. So at the very least, if there's a conflict between these and the court is not going to give preference to the specific language, there needs to be some factual findings about what the parties intended the scope of this release to be. And we sought that before the district court, and we actually asked for a jury instruction about the applicability of the release. So your position is that it's an ambiguous contract and we should do stuff, that there should have been an inquiry into the intent, extrinsic evidence? My argument is that it's not ambiguous, so that it unambiguously releases Mr. McKay for the breach of fiduciary duty claim. I thought you said, which your colleague says it's unambiguous, and you all just have conflicting views of that. If it's unambiguous, the district court interprets it, and we do a review de novo, right? We don't look for factual findings. It's a matter of law. Correct. Looking at this de novo, you can't come to the conclusion that it unambiguously does not apply to the presale breach of fiduciary duty claim when you have that exact claim called out in the clause itself. Your Honor, if I could also address the discussion about Golding very quickly. There is no indication that Eastland Foods sought to change the holding from Golding. How is that the holding? I mean, I agree. That one sentence in Golding is very good for you, but I read that, that just seems like stray over broad language. Correct, Your Honor. I'm sorry. It was not the specific holding in Golding, but that language in Golding. That has never, and that's a fairly old case. The year is not at the forefront of my mind, but it has never been questioned by a Maryland court, state or federal. Has it ever been extended by a Maryland court, state or federal? I don't know, Your Honor. Like applied or what? I mean, the statement itself in Golding seems like it was obviously, did anything in Golding turn on the question of whether or not officers are protected by the business judgment rule? No, I don't think so, Your Honor. And have they ever, has that holding, has that language, I won't say holding, has that language ever been applied in a case where something turned on whether an officer was protected by the business judgment? I don't know, standing before you, Your Honor. But I do know if we're looking to kind of for guidance on that issue, given what I think is probably a lack of guidance from the Maryland courts, again, if we're looking to Delaware, which every Maryland court says we're going to look to Delaware to interpret, to fill in the gaps here in Maryland corporate law, Delaware judicially applies the business judgment presumption to officers, and that's not statutory. That's a common law. And we never argued, and I don't argue today, that the statutory director duties are applicable to officers. It's a common law business judgment presumption that Golding notes, at the very least, applies to officers, has not been called into question, and, frankly, is very commonly applied to officers, both in Maryland and Delaware and elsewhere. Thank you, Your Honors. Thank you, Counsel. Thank you. We'll, if the clerk can adjourn court for the day, and then we'll come down and greet the counsel. This honorable court stands adjourned until tomorrow morning at 930. God save the United States and this honorable court.
judges: A. Marvin Quattlebaum Jr., Toby J. Heytens, William B. Traxler Jr.